# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTWAN GRIFFIN, an individual,<br><br>　　　　　Plaintiff,<br>　v.<br>NAVIENT SOLUTIONS, INC., a corporation, and DOES 1 through 10 inclusive,<br><br>　　　　　Defendant. | CASE NO. 15cv1818 DMS (DHB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This case comes before the Court on Defendant's motion for summary judgment. Plaintiff filed an opposition to the motion, and Defendant filed a reply. After a thorough review of the issues, the motion is granted in part and denied in part.

## I.
## BACKGROUND

Plaintiff Antwan Griffin has been active duty in the United States Navy since December 2001. Since 2009, Plaintiff has "been deployed three times including a thirteen month assignment in Cuba from 2010-2011." (Decl. of Plaintiff Antwan Griffin in Supp. of Opp'n to Mot. ("Griffin Decl.") ¶ 4.) Plaintiff has "had numerous underways (sea exercises) as well." (*Id.*) In January 2012, Plaintiff "participated in a US Navy rescue mission of hostages from Somali pirates in the Persian Gulf." (*Id.* ¶ 5.)

///

In 2003, Plaintiff was in a relationship with Shannon Matthews. On October 8, 2003, Plaintiff executed a Special Power of Attorney in favor of Ms. Matthews "[t]o accept, endorse, negotiate for, sign for and take possession of such leased property in my name, and to execute all necessary documents, instruments or papers and perform all acts necessary to carry out the foregoing." (Decl. of Cheryl Dillon in Supp. of Mot. ("Dillon Decl."), Ex. B.) That Power of Attorney remained in effect until October 8, 2004. (*Id.*)

Five days after Plaintiff executed the Power of Attorney, on October 13, 2003, Ms. Matthews applied for a student loan in the amount of $10,224. (*Id.*, Ex. A.) That application lists Plaintiff as the Co-borrower, and is signed on his behalf. (*Id.*)[1] That loan disbursed on November 19, 2003, and is referred to here as Loan 6.

Plaintiff states his relationship with Ms. Matthews ended in November 2003. (Griffin Decl. ¶ 6.) Nevertheless, on January 14, 2004, Ms. Matthews applied for another student loan in the amount of $2,000. (Dillon Decl., Ex. C.) As with Loan 6, the application for the second loan lists Plaintiff as the Co-borrower, and is signed on his behalf. (*Id.*) That loan disbursed on January 27, 2004, and is referred to here as Loan 7.

Ms. Matthews applied for two additional student loans on April 27, 2004, and July 30, 2004, for $1,000 and $15,000, respectively. (*Id.*, Exs. D, E.) As with Loans 6 and 7, these applications list Plaintiff as the Co-borrower, and are signed on his behalf. (*Id.*) Those loans disbursed on May 19, 2004, and August 10, 2004, respectively. Those Loans are referred to here as Loans 9 and 10.

Plaintiff states he did not sign the applications for Loans 6, 7, 9 and 10. (Griffin Decl. ¶ 10.) Plaintiff also states Loans 7, 9 and 10 "were taken out without my knowledge, permission or authorization." (*Id.*)

///

///

---

[1] Plaintiff states he did not sign this Application. (Griffin Decl. ¶ 8.)

At some point thereafter, the Loans were referred to Defendant Navient Solutions, Inc. for servicing. (Dillon Decl. ¶ 2.) Defendant's attempts to collect on the Loans alerted Plaintiff to Loans 7, 9 and 10.

In April 2005, Plaintiff contacted Defendant's fraud department to inform them that his signatures on the applications for three of the Loans were made without his permission. (Decl. of Jeremy Golden in Supp. of Opp'n to Mot. ("Golden Decl."), Ex. 15.) In response, Defendant sent Plaintiff a letter requesting that he complete an Identity Theft Report. (*Id.*, Ex. 6.)

On September 28, 2005, Plaintiff again contacted Defendant's fraud department stating he did not authorize Loans 7, 9 and 10. (*Id.*, Ex. 15.) Defendant sent Plaintiff another letter requesting an Identity Theft Report. (*Id.*, Ex. 7.)

Plaintiff contacted Defendant's fraud department again on November 16, 2005, stating he did not receive a copy of Defendant's letter because he had moved, and asking for another copy. (*Id.*, Ex. 15.) It is unclear whether Defendant sent another letter to Plaintiff. It is undisputed, however, that Plaintiff did not submit an Identity Theft Report at that time.

Thereafter, Defendant made several calls to Plaintiff in an attempt to collect on the Loans. (*Id.*) Plaintiff states he received calls on two of his phone numbers, 760-430-8143 and 760-453-8233. (Griffin Decl. ¶ 14.) Plaintiff states he used the 8143 number prior to 2007/2008. (Def.'s Statement of Undisputed Facts in Supp. of Reply to Opp'n to Mot., Fact No. 18.) Defendant states it never used an autodialer to place calls to the 8233 number. (Dillon Decl. ¶ 8.)

On December 31, 2009, Defendant "charged off" the Loans, and the Loans "were placed with outside agencies for collection." (*Id.* ¶ 5.) Between January 2010 and February 2015, the Loans were placed with nine different collection agencies. (*Id.* ¶ 7.) Defendant states those agencies "are independent contractors. NSI did not exercise control over the conduct or activities of these collection agencies and has no right to
///

exercise control under the applicable service contracts NSI maintains with these vendors." (*Id.*)

It appears that on July 31, 2012, Defendant began reporting the delinquent Loans to the credit reporting agencies. (Golden Decl., Ex. 15.) It also appears Plaintiff called Defendant in March 2013 about the Loans. (*Id.*)

On January 14, 2015, Plaintiff sent Defendant a letter requesting that any further attempts to contact him be in writing only. (Dillon Decl., Ex. F.) Thereafter, Defendant recalled the Loans from the outside collection agencies, and no further attempts at collections were made. (*Id.* ¶ 6.)

Plaintiff contacted Defendant again on February 23, 2015. (Golden Decl., Ex. 15.) Defendant provided Plaintiff with another Identity Theft Packet, which he returned to Defendant on March 12, 2015. (Decl. of Jayson Bocanegra in Supp. of Mot. ("Bocanegra Decl.") ¶ 5.) Defendant "initially concluded that [Plaintiff's] claim of identity theft with regard to Loans 7, 9 and 10 could not be substantiated." (*Id.* ¶ 6.) However,

> [u]pon further review, NSI determined that Loans 7, 9, and 10 were originated during a period of time when Griffin was out of the country serving in the military and were approved based on the fact Matthews had a Power of Attorney. NSI ultimately concluded the Power of Attorney did not give Matthews the authority to enter Griffin into contracts.

(*Id.* ¶ 7.) As a result of that determination, Defendant removed Plaintiff's name from Loans 7, 9 and 10 on May 28, 2015. (*Id.*, Ex. B.) Defendant also submitted an update to the credit reporting agencies that removed those Loans from Plaintiff's credit report. (*Id.*) Those Loans were removed from Plaintiff's credit report on June 4, 2015. (Def.'s Statement of Undisputed Facts in Supp. of Reply to Opp'n to Mot., Fact No. 16.)

On June 18, 2015, Plaintiff filed the present case in San Diego Superior Court. In the Complaint, he alleges claims for (1) violation of the Rosenthal Act, California Civil Code §§ 1788.11(d), 1788.11(e), 1788.17 and 1788.18, (2) violation of the Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code § 1785.25(a), (3) violation of the Identity Theft Act, California Civil Code § 1798.92 *et.*

*seq.*, (4) invasion of privacy and (5) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii). Defendant removed the case to this Court on August 14, 2015.

## II.

## DISCUSSION

Defendant moves for summary judgment on all of Plaintiff's claims.[2] Plaintiff argues there are genuine issues of material fact that preclude summary judgment.

**A.   Legal Standard**

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id. See also Butler v. San Diego District Attorney's Office*,

---

[2] Defendant also moves for summary judgment that it is not liable for the conduct of any third party collection agencies. Notably, none of those agencies is named as a defendant in this case, which they would have to be for any theories of vicarious liability to apply. And even if any of these agencies was named as a defendant, Plaintiff has failed to produce any evidence to support any theory of vicarious liability. Because there is no issue of vicarious liability in this case, Defendant's request for summary judgment on that issue is denied as moot.

370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B.     Statutes of Limitation**

Before turning to the substantive claims alleged in this case, the Court turns to whether Defendant is entitled to summary judgment based on the statutes of limitation. Defendant argues this affirmative defense entitles it to summary judgment on all claims except the CCRAA claim. Plaintiff asserts he is entitled to the benefits of the Servicemembers Civil Relief Act ("SCRA"), which renders his claims timely.

The statutes of limitation for Plaintiff's claims are one year for the Rosenthal Act claim, Cal. Civ. Code § 1788.30(f), and the invasion of privacy claim, *Maheu v. CBS, Inc.*, 201 Cal. App. 3d 662, 676 (1988), and four years for the Identity Theft Act claim, Cal. Civ. Code § 1798.96, and the TCPA claim. *See* 28 U.S.C. § 1658(a); *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015).

On the Rosenthal Act, invasion of privacy and TCPA claims, Defendant asserts it ceased all collection efforts on December 31, 2009, and thus Plaintiff should have filed on or before December 31, 2010, for the Rosenthal Act and invasion of privacy claims and on or before December 31, 2013, for the TCPA claim.[3] On the Identity Theft Act claim, Defendant argues Plaintiff knew he was a victim of identity theft no later than 2006, and thus he should have filed this claim before 2010.

In response to these arguments, Plaintiff asserts he is entitled to the benefits of the SCRA. The SCRA "was passed 'to enable [servicemembers] to devote their entire energy to the defense needs of the Nation.'" *Brewster v. Sun Trust Mortgage, Inc.*, 742

---

[3] The Court notes the Rosenthal Act claim is based on conduct other than Defendant's collection efforts, *e.g.*, credit reporting. (*See* Compl. ¶ 26(h).) Defendant does not assert that conduct ceased by December 31, 2009, and thus, the following discussion does not affect that aspect of Plaintiff's Rosenthal Act claim.

1    F.3d 876, 878 (9th Cir. 2014) (quoting 50 U.S.C. app. § 502(1)).  To accomplish this
2    objective, the SCRA includes a provision on tolling of statutes of limitations.  *See* 50
3    U.S.C. § 3936(a).  This provision states:

> The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

8    50 U.S.C. § 3936(a).
9         Defendant here does not dispute that Plaintiff has been active duty in the United
10   States Navy since 2001.  However, it argues the SCRA's tolling provision "should not
11   be applied to career military who are not hampered by their service from pursuing a
12   claim in a timely manner." (Mem. of P. & A. in Supp. of Mot. at 22.)  In support of this
13   argument, Defendant relies on a case from the Fifth Circuit, *Pannell v. Continental Can
14   Co.*, 554 F.2d 216 (5th Cir. 1977), but that decision has been criticized by the United
15   States Supreme Court.  *See Conroy v. Aniskoff*, 507 U.S. 511 (1993).  Defendant does
16   not address *Conroy* in its reply brief, but in light of that case, this Court declines to
17   follow *Pannell*.  Under the reasoning in *Conroy*, Plaintiff is entitled to tolling during the
18   entirety of his active duty service in the Navy.  Thus, Defendant is not entitled to
19   summary judgment based on the statutes of limitation.

20   **C.   Rosenthal Act**

21        Turning to the substantive claims, Plaintiff's first claim alleges eleven violations
22   of the Rosenthal Act.  (*See* Compl. ¶ 26(a)-(k).)  Specifically, Plaintiff alleges
23   Defendant engaged in unlawful debt collection activities, unlawful credit reporting
24   activities and failed to cease collection activities until it made a good faith investigation
25   into Plaintiff's claim of identity theft.  (*Id.*)  Defendant argues there is no evidence it
26   violated these sections of the Act, therefore it is entitled to summary judgment.

27        As the party moving for summary judgment, Defendant bears the burden of
28   showing there are no genuine issues of material fact.  It has failed to meet that burden

on the first two aspects of Plaintiff's Rosenthal Act claim. Although Defendant asserts it did not place any debt collection calls to Plaintiff after December 31, 2009, Plaintiff presented evidence to the contrary. (*See* Golden Decl., Ex. 15) (showing call to Plaintiff on March 13, 2013). Furthermore, Defendant failed to show that it did not place any debt collection calls prior to December 31, 2009, and indeed, the evidence reflects that it did. (*See id.*) (showing calls to Plaintiff on November 16, 2005, November 25, 2005, December 6, 2005, December 8, 2005, and December 9, 2005). Thus, Defendant is not entitled to summary judgment on this aspect of Plaintiff's Rosenthal Act claim.[4]

Defendant also fails to show there is an absence of genuine issues of material fact on the credit reporting aspect of Plaintiff's claim. To be clear, this aspect of Plaintiff's claim is based on 15 U.S.C. § 1692e(8), which states it is unlawful to "[c]ommunicat[e] or threaten[ ] to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Defendant argues it is not liable under this statute because it "updated the status of Loans 7, 9 and 10 upon receipt of *written notice* of Plaintiff's identity theft claim to reflect the loans as under investigation and disputed." (Mem. of P. & A. in Supp. of Mot. at 11) (citing Bocanegra Decl. ¶ 9) (emphasis added). However, the statute "does not impose a writing requirement on consumers who wish to dispute a debt." *Brady v. Credit Recovery Co.*, 160 F.3d 64, 67 (1st Cir. 1998). In this case, the evidence reflects Plaintiff notified Defendant of a dispute surrounding the Loans by April 29, 2005. (Golden Decl., Ex. 15.) Defendant fails to show it communicated that dispute to the credit reporting agencies, and thus it is not entitled to summary judgment on this aspect of Plaintiff's claim.

The final aspect of Plaintiff's Rosenthal Act claim concerns Defendant's alleged failure to "cease collection activities until [it] made a good faith determination regarding Plaintiff's claims of identity theft." (Compl. ¶ 26(k).) Here, Defendant argues there is

---

[4] Defendant relies on these same arguments in support of its request for summary judgment on Plaintiff's invasion of privacy claim. For the reasons set out above, that request is similarly denied.

no evidence it violated this section of the Rosenthal Act. The Court agrees. Defendant has presented evidence that it ceased all collection efforts by at least March 12, 2015, which is when Plaintiff submitted his written claim of identity theft to Defendant. (Def.'s Statement of Undisputed Facts in Supp. of Reply to Opp'n to Mot., Fact No. 10.) Although Plaintiff disputes that Defendant ceased all collection efforts by that time, he fails to provide any evidence to the contrary. Therefore, the Court grants Defendant's motion for summary judgment on this aspect of Plaintiff's Rosenthal Act claim.

**D.     Consumer Credit Reporting Agencies Act ("CCRAA")**

Plaintiff's second claim is for violation of the CCRAA. Specifically, Plaintiff alleges Defendant "violated the CCRAA by furnishing information to a consumer credit reporting agency that [it] knew or should have known was incomplete or inaccurate." (Compl. ¶ 31.) Defendant argues it is entitled to summary judgment on this claim because it "had no knowledge, and no reasonable basis on which it 'should have known,' that Loans 7, 9 and 10 were obtained without Plaintiff's authorization until it received his identity theft affidavit and police report on March 13, 2015." (Mem. of P. & A. in Supp. of Mot. at 13.) However, as stated above, there is evidence Plaintiff disputed his responsibility for the Loans as early as April 29, 2005, which was before Defendant referred the Loans to the credit reporting agencies. (Golden Decl., Ex. 15.) In light of this evidence, Defendant is not entitled to summary judgment on Plaintiff's CCRAA claim.

**E.     Identity Theft Act**

Plaintiff's third claim alleges Defendant violated the Identity Theft Act. This Act provides, "A person may bring an action against a claimant to establish that the person is a victim of identity theft in connection with the claimant's claim against that person." Cal. Civ. Code § 1798.93(a). Defendant argues it is not a "claimant" under the Act, therefore it is entitled to summary judgment on this claim.

The Identity Theft Act defines "claimant" as "a person who has or purports to have a claim for money or an interest in property in connection with a transaction procured through identity theft." Cal. Civ. Code § 1798.92(a). Defendant argues it is not a "claimant" for purposes of this claim because it "accepted Plaintiff's claim of identity theft and removed him from the loans at issue following its investigation of his claim." (Mem. of P. & A. in Supp. of Mot. at 14.) Plaintiff correctly points out that these facts do not mean Defendant is no longer a "claimant" under the statute. Defendant still has an interest in the Loans, by which it maintains its status as a "claimant." What Defendant does not have, however, is *a claim against Plaintiff* on Loans 7, 9 and 10, which is a prerequisite for an identity theft claim. *See* Cal. Civ. Code § 1798.93(a) ("A person may bring an action against a claimant to establish that the person is a victim of identity theft *in connection with the claimant's claim against that person*.") (emphasis added). The parties do not dispute Defendant no longer has a claim against Plaintiff on Loans 7, 9 and 10, and thus, with respect to those Loans, the Court grants Defendant's motion.

The parties also do not dispute Defendant does have a claim against Plaintiff on Loan 6. Plaintiff argues that claim warrants denial of Defendant's motion with respect to that Loan, while Defendant asserts Loan 6 is not at issue in this case.

The Complaint certainly supports Defendant's assertion. There, Plaintiff complained that only three loans were obtained without his knowledge or authorization. (Compl. ¶ 10.) Plaintiff's deposition testimony also supports Defendant's assertion. There, Plaintiff testified he gave Ms. Matthews permission to sign his name on the application for Loan 6. (Decl. of Debbie P. Kirkpatrick in Supp. of Mot. ("Kirkpatrick Decl."), Ex. A at 25:22-24.)

Although Plaintiff does not expressly repudiate the allegations in the Complaint or his deposition testimony, he now disputes he is liable for Loan 6. (*See* Griffin Decl. ¶ 12.) Specifically, he states:

> I consider [Loan 6] to be part of this case and dispute being liable for it. In repeated conversations I had with Defendant they always told me they

> had a power of attorney with my name yet they never provided me this copy of the power of attorney. If it was mailed to me I do not recall receiving it until after this case was filed. It was not until after this lawsuit was filed an in discovery I first saw the power of attorney. If Defendant had been forthright about the power of attorney only applying to leases I would have always disputed the first loan. But because Defendant misled me I took their word regarding the power of attorney. I now know that the power of attorney does not apply to any student loans. I have also learned that my name was not properly signed on the first loan pursuant to the power of attorney.

(*Id.*) Plaintiff relies on this statement as evidence that there is a genuine issue of material fact such that summary judgment on this claim is unwarranted.

The problem with Plaintiff's position, however, is it contradicts both his Complaint and his prior deposition testimony. "'The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'" *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)). As noted in *Yeager*, the "sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony,' which 'would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" *Id.* (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)). To trigger the sham affidavit rule, the district court "must make a factual determination that the contradiction is a sham, and the 'inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit.'" *Id.* (quoting *Kennedy*, 952 F.2d at 998-99.)

Here, the Court has no hesitation in determining that the contradiction is a sham. The Complaint references only three disputed loans,[5] and Plaintiff testified that he gave Ms. Matthews permission to sign his name on the application for Loan 6. This pleading

---

[5] The Court notes Plaintiff never moved to amend his Complaint to conform to his newfound belief about Loan 6 despite Defendant's discovery responses in January 2016, which indicated Defendant would produce the Power of Attorney. (Golden Decl., Ex. 5.)

1 and testimony are consistent with other evidence in this case. (*See* Golden Decl., Ex.
2 15) (documenting 4/29/05 call from Plaintiff to Defendant in which he alleged his
3 signature on three loans was forged, 9/28/05 call from Plaintiff to Defendant in which
4 he stated he co-signed for first loan only); (Golden Decl., Exs. 6, 7) (letters from
5 Defendant to Plaintiff confirming his claim of identity theft on three loans).

6       Furthermore, Plaintiff's explanation for why he now disputes Loan 6, namely his
7 recent review of the Power of Attorney, is not credible. Plaintiff suggests he only
8 recently received the Power of Attorney from Defendant, and that was the first time he
9 saw the document. (Griffin Decl. ¶ 12.) However, Plaintiff does not dispute he signed
10 the Power of Attorney on October 8, 2003, before a notary public, (Dillon Decl., Ex. B),
11 and thus he must have seen it prior to Defendant's document production in this case.
12 Although seeing the document in the context of this case may have led to some new
13 theories about its legal effect, the document itself has not changed. Plaintiff's reliance
14 on the Power of Attorney as the basis for his newfound dispute does not change the
15 terms of that document, which Plaintiff saw and agreed to nearly thirteen years ago on
16 October 8, 2003.

17       Given the evidence, the Court concludes the contradiction over Loan 6 is a sham,
18 and does not raise a genuine issue of material fact. Accordingly, Defendant is entitled
19 to summary judgment on the entirety of Plaintiff's Identity Theft claim.

20 **F.   TCPA**

21       The final claim at issue here is Plaintiff's claim for violation of the TCPA.
22 Defendant argues it is entitled to summary judgment on this claim because there is no
23 evidence Defendant used an autodialer to make calls to Plaintiff's 8233 number.
24 Defendant also argues Plaintiff's 8143 number was a landline.

25       On the 8143 number, Plaintiff disputes that it was a landline. (Griffin Decl. ¶
26 14.) Therefore, Defendant is not entitled to summary judgment on the TCPA claim for
27 any calls placed to the 8143 number.

28

With respect to the 8233 number, Plaintiff does not dispute he has no evidence of any prerecorded or artificial voice messages from NSI, or that NSI did not use an automated dialer to call the 8233 number. (Def.'s Statement of Undisputed Facts in Supp. of Reply to Opp'n to Mot., Fact Nos. 20-21.)  Therefore, Defendant is entitled to summary judgment on the TCPA claim for any calls placed to the 8233 number.

## III.

## CONCLUSION AND ORDER

For these reasons, the Court grants in part and denies in part Defendant's motion for summary judgment.  Specifically, the Court grants the motion as to (1) Plaintiff's claim that Defendant violated the Rosenthal Act, California Civil Code § 1788.18, (2) Plaintiff's claim for violation of the Identity Theft Act, and (3) Plaintiff's TCPA claim based on any calls placed to the 8233 number.  As to all other claims, Defendant's motion is denied.

**IT IS SO ORDERED**.

DATED: September 30, 2016

_____
HON. DANA M. SABRAW
United States District Judge